FILED
2021 AUG 31 PM 3:23
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| MARIAN B., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:20-cv-00254-DAO <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Marian B.[1] filed this action asking the court to reverse and remand the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–34, 1381–85. (*See* Pl.'s Opening Br. 1–2, Doc. No. 24.) The Administrative Law Judge ("ALJ") determined Ms. B. did not qualify as disabled. (Certified Tr. of Admin. R. ("Tr.") 31, Doc. Nos. 16–21.) After careful review of the record and the parties' briefs,[2] the court[3] AFFIRMS the Commissioner's decision.

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to Plaintiff by her first name and last initial only.

[2] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the appeal will be determined on the basis of the written memoranda, as oral argument is unnecessary.

[3] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 12.)

1

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner of the Social Security Administration. This court reviews the ALJ's decision to determine whether the record contains substantial evidence in support of the ALJ's factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Although the court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

The ALJ's factual findings will stand if supported by substantial evidence. 42 U.S.C. § 405(g). The substantial evidence standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Rather than mechanically accepting the ALJ's findings, the court will "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [ALJ's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). The ALJ must provide a sufficient statement of the case and discussion of the evidence to enable the court to assess the conclusions reached. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

In addition, the court reviews whether the ALJ applied the correct legal standards. The court may reverse where the ALJ fails to do so. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) ("[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence

analysis."); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."). Grounds for reversal also arise where the ALJ fails "to provide this court with a sufficient basis to determine that appropriate legal principals have been followed." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## APPLICABLE LAW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ employs a five-step sequential evaluation. The analysis requires the ALJ to consider whether:

1) The claimant presently engages in substantial gainful activity;
2) The claimant has a medically severe physical or mental impairment;
3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which precludes substantial gainful activity;
4) The claimant possesses a residual functional capacity to perform his or her past work; and

    5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

See 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden, in the first four steps, of establishing a disability preventing him or her from engaging in prior work activity. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

## PROCEDURAL HISTORY

Ms. B. filed applications for disability insurance benefits and supplemental security income on April 6, 2017, alleging disability beginning December 1, 2013.[4] (Tr. 18, 82–85, 229–38.) Ms. B. claimed disability due to a hearing problem, fibromyalgia, depression, diabetes, peripheral neuropathy, high blood pressure, a knee problem, a hip problem, and osteoarthritis of the back. (*Id.*) Ms. B.'s claims were initially denied on July 14, 2017, and on reconsideration on November 20, 2017. (*Id.* at 18, 82–83, 114–15.) A hearing was held on March 18, 2019. (*See id.* at 39–64.) After the hearing, the ALJ issued a decision on April 19, 2019, finding Ms. B. not disabled and denying her claims. (*Id.* at 18–31.)

At step two of the sequential evaluation, the ALJ determined Ms. B. had the severe impairments of profound sensorineural hearing loss, irritable bowel syndrome, fibromyalgia syndrome, degenerative disc disease of both the lumbar and cervical spine, and obesity. (*Id.* at

---

[4] Ms. B previously filed for disability insurance benefits and supplemental security income in 2013. (Tr. 65–81.) Her claims were denied on April 6, 2016, when the ALJ issued a decision finding Ms. B not disabled. (*Id.*) Ms. B. did not seek review of the April 2016 decision. (*Id.* at 18). As a result, the relevant period of alleged disability for this case began April 7, 2016. (*See id.*)

21.) The ALJ also found Ms. B. had medically determinable but non-severe mental impairments of adjustment disorder and cognitive change. (*Id.* at 21–22.) At step three, the ALJ found Ms. B.'s impairments did not meet or equal an impairment listing. (*Id.* at 23–24.) At step four, the ALJ determined Ms. G. had the residual functional capacity (RFC) to perform light work with the following limitations:

> The claimant can occasionally lift twenty pounds and ten pounds frequently. She can sit for a total of six hours during an eight-hour day with normal breaks. She can stand or walk for a total of two hours during an eight-hour day with normal breaks. She can occasionally climb ramps or stairs. She should never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can frequently reach, handle and finger. She can work in moderately quiet working conditions such as an office setting. She can have no more than occasional exposure to vibration, atmospheric conditions such as fumes, noxious odors and gases. She can have occasional exposure to hazards such as unprotected heights and dangerous machinery with moving mechanical parts.

(*Id.* at 24.) The ALJ found Ms. B. was capable of performing past relevant work as an administrative clerk and accounting clerk. (*Id.* at 30–31.) Therefore, the ALJ concluded Ms. B. was not disabled. (*Id.* at 31.)

The Appeals Council denied Ms. G.'s request for review, (*id.* at 4–8), making the ALJ's decision final for purposes of judicial review.

## DISCUSSION

Ms. B. raises two claims of error. First, she contends the ALJ erred in concluding she had no severe mental health impairments at step two of the sequential evaluation. Ms. B. asserts this error is harmful because no mental health restrictions appear in the RFC finding. Second, Ms. B. argues the ALJ failed to support his assessment of her subjective complaints with substantial evidence. (Opening Br. 1, Doc. No. 24.)

5

1. <u>Where the ALJ Found Severe Impairments at Step Two and Proceeded to the Next Step, Ms. B.'s Argument Fails as a Matter of Law.</u>

Ms. B. argues the ALJ erred in his analysis at step two of the sequential evaluation. Specifically, she maintains the ALJ should have found Ms. B.'s mental-health conditions constituted a severe impairment at this step. (*Id.* at 20.) She argues the ALJ's finding in this regard is harmful because it led to a lack of mental-health restrictions in the RFC determination. (*Id.*) The Commissioner points out that the ALJ reviewed Ms. B.'s mental-health impairments at step two, but found them non-severe because they caused only mild limitations. (Answer Br. 6, Doc. No. 31.) Despite this finding at step two, the ALJ considered Ms. B.'s mental-health conditions in his RFC analysis. (*Id.* at 7.) According to the Commissioner, even if the ALJ had erred by not finding a severe mental impairment at step two, any such error would be harmless where the ALJ proceeded to step three after finding other impairments severe. (*Id.* at 8.)

Ms. B.'s argument regarding the ALJ's findings under step two fails as a matter of law. To advance beyond step two of the sequential evaluation, the ALJ need only find *one* severe impairment. *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 20 C.F.R. § 404.1520(a)(4)(ii). "As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step." *Allman*, 813 F.3d at 1330. Put differently, so long as the ALJ finds at least one severe impairment such that the evaluation proceeds beyond step two, any failure to find *a particular* impairment severe at step two cannot be reversible error. In Ms. B.'s case, the ALJ found numerous other conditions severe, such that his analysis proceeded beyond step two. For this reason, Ms. B.'s step-two claim of error fails.[5]

---

[5] Ms. B. argues the ALJ's failure to find a severe mental-health impairment at step two was harmful because it led to a lack of mental-health restrictions in the RFC determination. However, she cites no authority supporting the proposition that any such error can be harmful where the ALJ's evaluation proceeds past step two. And the record shows the ALJ considered

    2.   <u>The ALJ Adequately Supported His Analysis of Ms. B.'s Subjective Complaints with Substantial Evidence.</u>

Ms. B. next claims the ALJ erred by failing to support his assessment of Ms. B.'s subjective complaints with substantial evidence. (Opening Br. 22, Doc. No. 24.) Specifically, Ms. B. argues the ALJ did not account for her subjective complaints, even though they are reasonably consistent with the medical evidence. (*Id.* at 23.) She points out her failure to continue physical therapy was because she lost her insurance, and objects to the ALJ's reliance on this failure. (*Id.*) Ms. B. also maintains that her personal activities and part-time work are insufficient to support the ALJ's rejection of her subjective complaints. (Reply Br. 2–3, Doc. No. 32.) For her part, the Commissioner argues the ALJ validly concluded Ms. B.'s symptomatic complaints were unsupported by objective medical evidence and other evidence in the record. (Answer Br. 9, Doc. No. 31.)

Ms. B.'s subjective symptoms include full body pain and tenderness, to the point that she is sometimes unable to get out of bed and has difficultly sitting. (Tr. 298.) Ms. B. reported fatigue, difficulty focusing and concentrating, and memory problems. (*Id.*). She cannot hear well, and equilibrium problems make it difficult for her to walk. (*Id.*) Ms. B. argues the ALJ wrongfully rejected her statements about the intensity and persistence of these subjective complaints solely because they were not supported by objective medical evidence. (Opening Br. 23, Doc. No. 24); *see also* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms . . . solely because the available objective medical evidence does not substantiate your statements.") This is not the case. The ALJ analyzed Ms. B.'s subjective complaints in light of the objective medical

---

Ms. B.'s mental-health conditions in great depth, both in his step two analysis, (Tr. 21–22), and in his step four evaluation, fully considering its effect on her functional capacity, (Tr. 27–30).

evidence. Consistent with governing regulations, the ALJ also considered Ms. B.'s daily activities, treatment sought and received, and other factors. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Overall, the ALJ properly accounted for Ms. B.'s subjective symptoms insofar as they were supported by the whole record. (*See, e.g.*, Tr. 30 ("[T]he above residual functional capacity assessment is supported by consideration of the medical evidence and clinical findings, as well as the claimant's activities of daily living, and her subjective reports and testimony to the extent they are consistent with the other evidence of record.").)

First, with regard to Ms. B.'s pain and tenderness, the ALJ referenced medical evidence showing Ms. B. had full muscle strength in her extremities and normal findings on multiple musculoskeletal examinations. (Tr. 26 (citing Tr. 446, 431, 440, 451, 485, 489, 494, 498, 502, 530, 544, 549, 600, 660, 671, 692, 742, 745, 752, 841, 870, 872, 929, 942, 962).) Although she had some weakness due to pain, the records intimated that Ms. B's fibromyalgia was not constant. (*Id.* (citing Tr. 457, 1069, 1128, 1161).) The ALJ also pointed to imaging studies showing only mild degenerative changes and the minimal treatment Ms. B. sought and received.[6] (*Id.* (citing Tr. 543, 656, 670, 1294, 1409, 1411).) Moreover, the ALJ noted records showing Ms. B.'s fibromyalgia symptoms were controlled by medication. (*Id.* at 28 (citing Tr. 532, 1080).)

With regard to Ms. B.'s mental challenges, like focus and concentration, the ALJ reviewed medical records. He legitimately discounted the opinion of Blake Taylor, D.O., because psychiatry is not Dr. Taylor's specialty, Dr. Taylor used vague terms, and he did not articulate why restrictions were required or warranted. (*Id.* at 28–29.) The ALJ also discounted

---

[6] Ms. B.'s claim that the ALJ improperly relied on her failure to obtain physical therapy where she lost medical insurance is misplaced. In his decision, the ALJ acknowledged that as of May 2017, Ms. B. only had one therapy session left. (Tr. 26). This fact does not explain Ms. B.'s minimal treatment across the board.

the opinion of Gary Webb, APRN, because Mr. Webb simply checked boxes on a form rather than providing a narrative supported by the medical records. (*Id.* at 30.) Instead, the ALJ relied on the findings of the two psychological consultants who concluded Ms. B. had only mild limitations in understanding, remembering, and applying information. (*Id.* at 29.) In other words, the ALJ properly analyzed Ms. B.'s symptoms in light of objective medical evidence.

With regard to Ms. B.'s hearing loss, the ALJ also properly analyzed the evidence. Despite medical records showing Ms. B. made inconsistent statements about the extent of her hearing loss and her treatment provider's finding that her hearing was intact at normal conversational levels, the ALJ found Ms. B.'s hearing loss to be a severe impairment, and accounted for it in the RFC determination. (*Id.* at 21, 25, 27.) These evaluations were reasonable.

Ms. B.'s argument regarding the ALJ's analysis further fails because the ALJ did not find Ms. B's subjective symptoms to be unsupported based on this objective medical evidence and minimal treatment alone. He also carefully analyzed her daily activities. In this regard, the ALJ noted that Ms. B "has described daily functioning that is inconsistent with the presence of debilitating symptoms." (*Id.* at 27.) Ms. B. cares for herself and her pets without reminders. (*Id.*) She drives, cleans her home, plays the violin, reads, makes jewelry, goes camping, and works on puzzles. (*Id.*) Ms. B. attends church and church activities, functions as a choir director, performs acts of service, and ministers to women in her church, among other things. (*Id.* at 27, 29.) And most notably, Ms. B. manages her own finances and acts as a financial conservator with power of attorney for another person. (*Id.* at 27.) Finally, the ALJ noted that Ms. B. interviewed for a job in May 2017 and did some part-time work during her period of

claimed disability.[7] (*Id.* at 27, 30.) These are all legitimate considerations, viewed in totality. And it is reasonable to conclude, as the ALJ did, that these activities were inconsistent with Ms. B.'s subjective complaints and with a finding of disability.[8] *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990) (noting evidence of claimant's activities contradicted her assertions regarding her limitations).

Although the evidence in the record could support a different conclusion, the ALJ's evaluation of Ms. B.'s subjective complaints reflects a proper consideration of relevant factors. And far more than a "mere scintilla" of evidence supports the ALJ's conclusions. *See Lax*, 489 F.3d at 1084. The record contains substantial evidence to support the ALJ's finding that not all of Ms. B.'s symptoms were as serious as she alleged. Where findings are supported by substantial evidence, the court defers to the ALJ. *See Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990) (noting that credibility findings "are peculiarly the province of the finder of fact" and will not be upset "when supported by substantial evidence.").

## CONCLUSION

For the reasons set forth above, the court AFFIRMS the Commissioner's decision.

DATED this 31st day of August, 2021.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge

---

[7] It is permissible for the ALJ to consider part-time work. 20 C.F.R. § 404.1571 ("Even if the work you have done [during a period of claimed disability] was not substantial gainful activity, it may show that you are able to do more work than you actually did.")

[8] Notably, the ALJ also accounted for the limitations he found based on Ms. B.'s subjective complaints in his RFC determination. As one example, he limited Ms. B. to occasional exposure to hazards, based on her difficulty focusing. (Tr. 28.)